Filed 12/5/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| In re J.S., a Person Coming Under the Juvenile Court Law. | |
|---|---|
| THE PEOPLE, | D070163 |
| Plaintiff and Respondent, | (Super. Ct. No. J138205) |
| v. | |
| J.S., | |
| Defendant and Appellant. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY | D070164 |
| Plaintiff and Respondent, | (Super. Ct. No. SJ13146) |
| v. | |
| J.S., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Carolyn

M. Caietti, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent the People (D070163).

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent San Diego County Health and Human Services Agency (D070164).

While J.S. was a dependent of the juvenile court, a delinquency petition was filed alleging that she committed vandalism and used force and violence against another minor. The juvenile court declared her a "dual status" child, making her both a dependent and a ward of the court. (Welf. & Inst. Code, § 241.1, subd. (e).)[1] On appeal, J.S. argues that: (1) the juvenile court erred by failing to dismiss the delinquency petition and declaring her a dual status youth, (2) the court erred by detaining her in juvenile hall pending placement in a residential treatment facility, and (3) she was prejudiced by being declared a ward.[2] We reject J.S.'s arguments and affirm the judgment.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    The San Diego County Health and Human Services Agency (Agency) did not initially file a respondent's brief in this matter. However, J.S. appealed in both her dependency and delinquency cases. Thus, the Agency (Agency) and the People are both proper respondents. By separate order, we consolidated the appeals for purposes of this opinion.

2

FACTUAL AND PROCEDURAL BACKGROUND

In early 2015, J.S. was hospitalized multiple times because of suicide attempts and cutting herself.  She was approximately 13 years old at the time.  J.S. had been raped by her biological father when she was between the ages of six and nine, and suffered from sexual trauma, night terrors, feelings of detachment, difficulty falling asleep and staying asleep, and concentration problems.  Since 2014, J.S.'s family had been referred to San Diego Child Protective Services 13 times based on allegations of physical abuse, emotional abuse, general neglect, and sexual abuse.  In May 2015, the court ordered J.S. placed in a group home.  As a result of J.S's family's unwillingness and inability to care for her, J.S. became a dependent of the juvenile court in July 2015.

In January 2016, J.S.'s mother moved out of state.  J.S. reported that she was sad without her family and wanted to be near them.  That month, J.S. destroyed property at the school associated with her group home.  She damaged computers, broke a door, and poured paint on the floor.  J.S. had a history of discipline problems resulting from her defiant and disruptive behavior.

In early February 2016, while at a psychiatric hospital, J.S. engaged in an altercation with another patient, 14-year-old Olivia G.  J.S. pulled Olivia's hair and punched her in the face several times.  The San Diego Police Department arrested J.S. and transported her to juvenile hall.  A delinquency petition was filed alleging that J.S. unlawfully used force and violence on the person of Olivia in violation of Penal Code section 242, a misdemeanor.

3

At the time of the detention hearing, the San Diego County Probation Department (Probation Department) recommended that J.S. remain detained in juvenile hall because she posed a risk to herself and to the community as a result of her escalating violent behavior, history of substance abuse, and mental health needs. The court ordered that J.S. remain detained in juvenile hall and undergo a competency evaluation. The court further ordered the Probation Department and the Agency to meet and confer in order to determine whether the dependency or delinquency system would better serve J.S.'s needs.

Dr. Michael Stewart conducted a competency screening of J.S. He noted that she had a significant history of behavioral and emotional instability, relating in part to significant traumas she had suffered during her childhood, chronic family instability, and stress. Dr. Stewart concluded that J.S. had posttraumatic stress disorder and major depressive disorder with psychotic features, and that she abused cannabis. He further found that J.S. was competent to stand trial and that there was no indication that she posed an imminent danger to herself or others.

The Probation Department and the Agency met to discuss services and recommendations for J.S. After discussing the matter, they jointly recommended that it would be in J.S.'s best interests for her to continue to receive rehabilitative and mental health services through the Agency. This recommendation was based on J.S.'s age, her significant history of suicide attempts, her lack of criminal sophistication, and her lack of delinquency history. The agencies also recommended that the court dismiss the delinquency petition once J.S. was placed in a suitable dependency placement.

4

Shortly thereafter, in late February 2016, the San Diego County District Attorney amended the delinquency petition against J.S. to add allegations pertaining to the vandalism incident at J.S.'s school. The Probation Department requested a continuance of the delinquency proceedings to allow the agencies to discuss the new offense, because their prior recommendation was based solely on the battery charge. The juvenile court granted the request for a continuance and ordered the Agency and the Probation Department to meet and confer regarding whether J.S. should be designated a dual status youth.

The Agency and the Probation Department met and conferred again to discuss J.S.'s services. This time, they recommended that J.S. be designated a dual status youth. Based on the nature of J.S.'s offenses, her troubled past, and her self-harming behavior, both agencies agreed that her mental health rehabilitative needs should be addressed by both agencies via dual jurisdiction services. The Agency sought placement for J.S. at Vista Del Mar, a residential treatment facility in Los Angeles, and was working diligently to move forward with that placement. The Probation Department and the Agency recommended that J.S. remain detained at juvenile hall until a placement was secured for her.

In March 2016, the court held a jurisdiction hearing. J.S. admitted the vandalism charge as a misdemeanor in exchange for dismissal of the battery charge. The court accepted J.S.'s admission, designated the vandalism charge a misdemeanor, and continued the matter for disposition.

At the disposition hearing, the Probation Department and the Agency both recommended designating J.S a dual status youth because the dependency system alone had not been successful in rehabilitating her. J.S.'s counsel requested that the delinquency case be dismissed. The court refused to dismiss the delinquency case because of concerns over J.S.'s safety, as well as the safety of others. The court adjudged J.S. a ward under section 602 and designated her a dual status youth under section 241.1, subdivision (e). The court ordered that the Agency serve as the lead agency and that the dependency court serve as the lead court in the matter.

J.S. volunteered to go to Vista Del Mar. The Agency informed the court that a bed at the facility would be available later that week and requested that the court approve the out-of-county placement and travel. The court granted the Agency's requests and ordered that J.S. be detained in juvenile hall until a bed became available at a residential treatment facility.

## DISCUSSION

### I

*The Juvenile Court Acted Within Its Discretion in Designating J.S. a Dual Status Youth*

J.S. argues that the juvenile court abused its discretion by designating her a "dual status" child. She contends that the juvenile court should have dismissed the delinquency petition against her and designated her solely a dependent of the juvenile court. We reject these arguments.

"In California, the juvenile court's jurisdiction over a minor can be invoked in two ways: (1) by a dependency petition (§ 300), which alleges the child's home is unfit due to

6

parental abuse or neglect; or (2) by a delinquency petition, which accuses the child of either disobedience or truancy (§ 601) or the violation of a law that defines a crime (§ 602)."  (*In re W.B.* (2012) 55 Cal.4th 30, 42.)  "The dependency and delinquency systems serve overlapping but slightly different aims . . . .  Whereas the dependency system is geared toward protection of a child victimized by parental abuse or neglect, the delinquency system enforces accountability for the child's own wrongdoing, both to rehabilitate the child and to protect the public."  (*Id.* at p. 46.)  "Although California juvenile courts address the needs of dependent and delinquent minors differently, some minors who come before the court seem to fall under *both* systems. . . .  In general, however, California law prohibits a minor from simultaneously being declared a dependent child and a delinquent ward."  (*Ibid.*)

"In 2004, the Legislature created a small exception to the ban on dual jurisdiction. Section 241.1, subdivision (e) allows a minor to be designated a 'dual status child,' and treated simultaneously under the court's dependency and delinquency jurisdiction, but only in accordance with a precise written protocol."  (*In re W.B., supra*, 55 Cal.4th at pp. 46-47.)  The bill creating the exception was cosponsored by the Judicial Council of California and the Children's Law Center of Los Angeles to address the situation some children face when they are "caught between the dependency and delinquency juvenile justice systems" and "need the interventions of both [systems]."  (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 129 (2003-2004 Reg. Sess.) as amended Jan. 5, 2004.)  The sponsors of the bill recognized that the existing ban on dual jurisdiction "inhibit[ed] the state's 'ability to address in a comprehensive and effective manner the

7

multifaceted concerns and needs associated with these children.' " (Sen. Health & Human Services Com., Analysis of Assem. Bill No. 129 (2003-2004 Reg. Sess.) as amended March 8, 2004.) The sponsors noted that dual jurisdiction protocols would ensure that "the county and the court [would] have new flexibility and resources and tools to address the needs of the youths in question" and that the child welfare and probation agencies would not provide duplicative services. (*Ibid.*) San Diego County is one of 18 counties in the state that has established a written protocol "to allow the county probation department and the child welfare services department to jointly assess and produce a recommendation that the child be designated as a dual status child, allowing the child to be simultaneously a dependent child and a ward of the court." (§ 241.1, subd. (e); Protocol for Coordination Between County of San Diego's Probation Department and Health and Human Services Agency/Child Welfare Services in Crossover Youth Matters Before the Juvenile Court (July 2015) <http://www.courts.ca.gov/documents/san_diego_dual_status_protocol.pdf> [as of Dec. 2, 2016]; Assembly Bill 129 Protocols <http://www.courts.ca.gov/documents/ab_129_summaries_by_county.pdf> [as of Dec. 2, 2016].)

"Whenever a minor appears to come within the description of both Section 300 and Section 601 or 602, the county probation department and the child welfare services department shall . . . initially determine which status will serve the best interests of the minor and the protection of society." (§ 241.1, subd. (a).) The county probation department and the child welfare services department recommend to the juvenile court

8

whether the child should be a dependent child, ward of the court, or dual status child. (§ 241.1, subds. (a), (e).) "Once the recommendations of both departments are presented to the juvenile court, it remains for the court to 'determine which status is appropriate for the minor.' " (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1506; § 241.1, subd. (a).)

We review the juvenile court's determination under section 241.1 regarding the designation applied to a child who qualifies as both a dependent and a ward of the court for abuse of discretion. (*In re M.V., supra*, 225 Cal.App.4th at p. 1506.) " 'To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice.' [Citation.] . . . [W]e will not lightly substitute our decision for that rendered by the juvenile court. Rather, we must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings where there is substantial evidence to support them." (*Id.* at pp. 1506-1507.)

We conclude that the juvenile court did not abuse its discretion when it designated J.S. a dual status child. J.S. had been in the dependency system for more than a year before a delinquency petition was filed against her. During that time, she received extensive services, including ongoing therapy and placement in a group home where she received assistance with developing coping mechanisms. Despite the services that she received through the Agency as a dependent, J.S. continued to act out. She engaged in multiple physical altercations, including with a student at her school and individuals at the hospital, vandalized classrooms on at least two occasions, threatened a teacher, engaged in self-harming behavior, and exhibited suicidal behavior. It is thus clear that

9

the services the Agency had provided to J.S. were not sufficient to address her complex rehabilitative needs and hold her accountable for her actions. Based on the record before us, the juvenile court could reasonably have concluded that J.S. would benefit from being a dual jurisdiction child. As a ward of the court, J.S. would be subject to probation conditions aimed at holding her accountable for her actions, including reporting to a probation officer, complying with a curfew and restrictions on travel, participating in counseling and education directed by the probation officer, paying restitution, and requiring her to participate in substance abuse treatment if directed by the probation officer.

We further conclude that the juvenile court did not abuse its discretion when it declined to dismiss the delinquency petition against J.S. The juvenile court may dismiss a delinquency petition "if the court finds that the interests of justice and the welfare of the person who is the subject of the petition require that dismissal, or if it finds that he or she is not in need of treatment or rehabilitation." (§ 782.) In this case, the court found both that it would not serve the interests of justice to dismiss the petition and that J.S. needed further rehabilitation and treatment. These findings are supported by the evidence in the record. As we have detailed, services through the dependency system did not sufficiently address J.S.'s problems. She continued to engage in acts that were harmful to herself and others. In fact, her aggressive behavior escalated while she was receiving services through the dependency system. Thus, she required further rehabilitation and treatment.

Although it is clear that J.S. suffered serious trauma in the past and required significant mental health services, she also continued to engage in harmful, destructive

10

behavior. As a result, she could also benefit from "the delinquency system[, which] enforces accountability for the child's own wrongdoing, both to rehabilitate the child and to protect the public." (*In re W.B., supra*, 55 Cal.4th at p. 46.) Because J.S. continued to pose a threat to herself and the public, the court could have reasonably concluded that it would not serve the interests of justice to dismiss the delinquency petition.

Based on foregoing, we conclude that the juvenile court did not abuse its discretion by designating J.S. a dual status child and declining to dismiss the delinquency petition against her.

II

*The Juvenile Court Acted Within Its Discretion in Detaining J.S. at Juvenile Hall*

J.S. argues that the juvenile court abused its discretion by detaining her at juvenile hall until a suitable placement became available. Specifically, she challenges her detention at juvenile hall after she was adjudicated a ward of the court. She argues that she should have been released to the Agency until a suitable placement was available. We reject J.S.'s argument.

"The statutory scheme governing juvenile delinquency is designed to give the court 'maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it.' [Citation.] Flexibility is the hallmark of juvenile court law . . . . [Citation.] [T]he juvenile court has long enjoyed great discretion in the disposition of juvenile matters [citation]." (*In re Greg F.* (2012) 55 Cal.4th 393, 411.) Juvenile courts have broad discretion " ' "to impose conditions to foster rehabilitation and to protect public safety." ' " (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1152.) "[T]he court [can]

11

choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public. [Citation.] . . . [T]he court [does not] necessarily abuse its discretion by ordering the most restrictive placement before other options have been tried." (*In re Eddie M*. (2003) 31 Cal.4th 480, 507; §§ 727, subd. (a)(1), 730, subd. (a) [if the minor is adjudged a ward of the court, the court can make any reasonable order for the custody of the minor, including placing the minor in juvenile hall].)

" 'An order of disposition, made by the juvenile court, may be reversed by the appellate court only upon a showing of an abuse of discretion. . . .' [Citation.] It is not the responsibility of this court to determine what we believe would be the most appropriate placement for a minor. This is the duty of the trial court, whose determination we reverse only if it has acted beyond the scope of reason." (*In re Khamphouy S.* (1993) 12 Cal.App.4th 1130, 1135; see also *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395.)

After the juvenile court adjudged J.S. a ward of the court, it continued her detention at juvenile hall until a bed became available at a residential treatment facility. We find no abuse of discretion in the juvenile court's order. J.S. had assaulted a student at her school and had engaged in three separate physical altercations during her hospitalization, including the incident in which she grabbed Olivia by the hair and punched her in the face six times. J.S. also caused significant property damage at her school and engaged in self-harming behavior. It was thus clear that J.S. posed a danger to herself and also to other persons and their property. On these facts, it was reasonable

12

for the juvenile court to determine that J.S. should remain in juvenile hall until an appropriate residential treatment facility placement was available for her.

J.S. relies on *In re Bianca S.* (2015) 241 Cal.App.4th 1272, 1275 to argue that the juvenile court cannot detain a minor in juvenile hall simply because the Agency does not have a suitable placement available for the minor at the time of the court's order. *Bianca S.* is not applicable in this case. In *Bianca S.*, the district attorney had filed delinquency petitions against two juvenile dependents, alleging they committed petty theft and vandalism. (*Id.* at p. 1274.) The probation officer's detention report recommended detaining the minors in juvenile hall and suggested that alternative placements were unavailable. (*Id.* at pp. 1274-1275.) The juvenile court ordered the minors detained in juvenile hall pending further hearing. (*Id.* at p. 1274.) On review, this court concluded that detention at juvenile hall was inappropriate because there was no evidence of an "urgent necessity" for the detention, as required under sections 635 and 636. (*Bianca S.,* at pp. 1274-1275.)

*Bianca S.* involved detention of minors at the detention phase of the case and was governed by sections 635 and 636, which require a showing of an "urgent necessity" for detention. In contrast, the case before us concerns J.S.'s detention at juvenile hall *after* she was adjudicated a ward of the court. As we explained, the juvenile court is afforded broad discretion and flexibility in crafting dispositional orders, including placement decisions. Based on the significant evidence in the record that J.S. posed a risk to herself and others, we conclude that the juvenile court did not act beyond the scope of reason

13

when it decided to detain her in juvenile hall until a bed was available for her at Vista Del Mar or another residential treatment facility.

## III

*J.S. has not Shown That the Collateral Consequences of the Juvenile Court's Orders Warrant Reversal*

J.S. argues that the juvenile court's orders adjudicating her a ward of the court, designating her a dual status child, and detaining her in juvenile hall after disposition should be reversed because the collateral consequences of those orders will prejudice her. Specifically, she contends that these orders may impact her in the areas of military service, obtaining a driver's license, employment, public benefits and housing. Further, she cites to research indicating that juvenile incarceration harms rather than rehabilitates minors.

J.S. has not cited to any legal authority to support her argument that the collateral consequences of the court's orders require reversal. In any event, although J.S. may suffer some collateral consequences as a result of her delinquency adjudication, the fact is that she engaged in wrongful conduct and poses a risk to herself and others. The juvenile court therefore had to craft orders aimed at both rehabilitating J.S. and protecting the public. (*In re Greg F., supra*, 55 Cal.4th at p. 411; *In re E.O., supra*, 188 Cal.App.4th at p. 1152.) We find no abuse of discretion in the trial court's orders in this case because the court's orders were intended to enforce accountability for J.S.'s conduct, were aimed at providing her rehabilitative services, and were intended to protect the public.

Accordingly, we reject J.S.'s argument that the potential collateral consequences of the juvenile court's orders require reversal.

DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.