Filed 12/11/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| In re R.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. R.G., Defendant and Appellant. | E067486 (Super.Ct.No. J267986) O P I N I O N |

APPEAL from the Superior Court of San Bernardino County.  Corey G. Lee and Steven A. Mapes, Judges.  Reversed with directions.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

On July 23, 2013, the juvenile court declared defendant and appellant, R.G. (Minor, born in April 2000), a dependent of the court. On October 27, 2016, while Minor remained a dependent of the juvenile court, the People filed a juvenile wardship petition alleging Minor had committed misdemeanor battery. (Pen. Code, § 242; count 1.)[1]

On November 22, 2016, after denying Minor's request to refer the matter for a Welfare and Institutions Code section 241.1[2] assessment and report, Minor admitted the allegation that she had committed misdemeanor battery. The court declared Minor a ward of the court, placed her on formal probation, placed her in the custody of the San Bernardino County Department of Children and Family Services (CFS), and scheduled the matter for a hearing pursuant to section 241.1. After subsequently receiving a section 241.1 report, the court again declared Minor a ward of the court with "CFS lead jurisdiction."[3]

On appeal, Minor contends the juvenile court prejudicially erred by refusing to refer the matter for a section 241.1 assessment, report, and hearing prior to taking jurisdiction, resulting in violations of Minor's statutory and due process rights.

---

[1] The People filed an amended juvenile wardship petition on November 4, 2016, alleging Minor had additionally, willfully caused a disturbance at school. (Ed. Code, § 32210, count 2.)

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3] The minute order for the hearing reflects that the court designated Minor as "dual status with CFS lead."

Moreover, Minor asserts that the subsequent section 241.1 report and hearing were statutorily inadequate. Minor maintains these errors resulted in prejudicial, reversible error. CFS maintains Minor forfeited any contention the section 241.1 report was untimely or inadequate and that any error was harmless. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND[4]

On October 26, 2016, Minor attempted to slap the victim, accusing the victim of sleeping with Minor's best friend. The victim blocked the slap. An officer apparently arrested, cited, and released Minor to her foster mother that day.

At a prehearing on October 31, 2016, it was noted that the parties had agreed to informal probation; however, the court rejected that agreement: "So just to let [Minor] and [the foster mother] know, we did have an off-the-record discussion. I did receive an informal probation stipulation, but then [the People] pointed out there is a sealed case that

---

[4] As part of Minor's admission of the allegation, the parties made a bare stipulation to a factual basis without stipulating to any evidentiary basis for that admission. "Generally speaking, a bare stipulation, without reference to supporting evidence in the record, has been deemed inadequate to establish the factual basis for a plea." (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1527 (*M.V.*).) "However, any such error will be deemed harmless where the contents of the record otherwise support a factual basis finding." (*Id.* at pp. 1527-1528 [noting that the petition, probation intake report, and police report supplied the factual basis for the admission rendering any error harmless].) *M.V.*'s holding would seem to conflict with the holding in *People v. Trujillo* (2006) 40 Cal.4th 165, at least insofar as when the factual basis includes the probation report. (*Id.* at p. 179 [the statements contained in a probation officer's report do not necessarily accurately reflect the facts of the offenses for which a defendant was convicted].) However, since Minor does not raise this issue on appeal and has relied on the juvenile probable cause declaration, instead of one of the probation reports, for her recitation of the underlying facts in this case, we make no further mention of the factual basis, or lack thereof, for her admission.

may potentially impact the [section] 654 [resolution].[5] [¶] And in addition, the court note[s] that there are two settled-out-of-court cases involving [section] 261.5 as well as [section] 496[, subdivision] (a), which concerns the court, and the court feels uncomfortable at this point agreeing to the informal probation without further social studies. And that's why we are requesting a [jurisdiction/disposition] report with full social studies."

On November 22, 2016, the probation department filed a report. The report includes a recitation of Minor's previous juvenile delinquency history, including an arrest on February 26, 2013, for unlawful sex with a minor;[6] an arrest on June 25, 2013, for receiving stolen property;[7] an arrest on September 1, 2015, for unlawful taking or driving

---

[5] Section 654 permits the probation officer to resolve delinquency allegations through a program of supervision. Such a program may be agreed upon in lieu of the filing of a juvenile wardship petition or after the filing of the petition with the potential for its dismissal should the juvenile successfully complete the program: "'[T]he purpose of the section 654 informal supervision program is to avoid a true finding on criminal culpability which would result in a criminal record for the minor.' [Citation.] Thus, a true finding under section 602 is inherently inconsistent with a program of informal supervision . . . ." (*In re K.C.* (2013) 220 Cal.App.4th 465, 471.)

[6] The recitation contains a notation that the matter was "Settled Out of Court; [district attorney] reject-insufficient evidence."

[7] This entry also contains the notation that the matter was "Settled Out of Court; [district attorney] reject-insufficient evidence."

of a vehicle;[8] and an arrest on February 26, 2016, for fighting at school.[9] It is noted in the report that Minor had been suspended from school 13 times for defiance and fighting; she had been expelled three times for nonattendance, truancy, and defiance; and she had 11 unexcused absences during the current school year.

The report further includes a description of Minor's dependency proceedings: the juvenile court had declared Minor a dependent of the court on July 23, 2013, pursuant to section 300, subdivisions (b) and (g) when Minor was living with her paternal grandmother.[10] Both Minor's mother and father were drug addicts with criminal histories. Minor reported her mother left her in the care of her father who was using drugs who, in turn, left her in the care of her grandmother. It was reported that Minor had been a victim of frequent sexual assaults by her father at the age of 13 and had suffered physical abuse by both her father and grandmother.

Minor reported living in group homes beginning in 2012 when her grandmother no longer wished to care for her.[11] In May 2016, Minor reported she began living in a foster

---

[8] This entry reflects Minor was granted summary probation with the matter later dismissed, discharged, and sealed.

[9] The People initially declined to file a petition on the matter asserting insufficient evidence supported the allegation; however, the matter was subsequently resubmitted to the People and formed the basis for the addition of the count 2 allegation in the amended juvenile wardship petition.

[10] The specific, factual allegations of the juvenile dependency petition are not reflected in the report.

care home. Minor said she "loves her present home and gets along well with everyone." Minor's behavior had apparently improved since being placed in the home. Minor's foster mother reported Minor had been in the home for six months; she got along with everyone and was doing well. Minor had been diagnosed with asthma and bipolar disorder. Minor had been assessed as having the mental intellect of a nine year old pursuant to an IQ test administered on August 19, 2015. Minor was receiving counseling and participating in Wraparound services provided by CFS. The probation report recommended Minor be given formal probation as a ward under which she should continue active participation in individual counseling and other services provided by CFS.[12] The report concluded: "The youth is in the custody of []CFS and is a [section] 300 dependent. The matter has not yet been referred to the [section] 241.1 committee to determine which agency will be the lead, as such, terms and conditions will be submitted as an Order of the Court."

On November 22, 2016,[13] the juvenile court held a pretrial hearing wherein Minor's counsel made the following request: "I think at this time what we're seeking is

---

*[footnote continued from previous page]*

[11] This date appears to conflict with the date given for the initiation of Minor's juvenile dependency.

[12] Probation was recommending, without explicitly stating, that Minor should be deemed "dual status" with CFS as the lead agency.

[13] The reporter's transcript reflects Minor, her foster mother, and "the C.A.S.A. [court-appointed special advocate (CASA)] advocate that's been appointed for her through the dependency court and the peer support through the Wraparound services court person" were present at the hearing. However, the transcript later reflects that

6

to send it to the [section] 241[.1] court before we do any resolution here. They need to assess it for—to make sure that what we work out up here is actually in compliance with what they work out there. And so . . . our [section] 241[.1] attorney, contacted us by e-mail this morning and asked that we send it to the [section] 241[.1] court."[14] The court responded: "I can do that but only after dispo[sition] here." Minor's counsel replied: "We're having some difficulty down in the [section] 241[.1] court, because in the previous months past—I've been told in months past the way we've resolved those is to send it to [the section] 241[.1] [court] first, and that way everything was done in conjunction with what they were doing down there. Subsequently, in the last couple of months that process has kind of been [changed]."

Minor's counsel further observed: "And the [section] 241[.1] partners, because I was handling [section] 241[.1] court last Tuesday, were very concerned about the change, because what's happening in the courts on cases where things are being resolved and we do our dispositional hearings— [¶] . . . [¶] —then they get to the [section] 241[.1] court, and they're unable to give them sanctions for violations of placement terms and things like that. So they want to have a meeting with the court and counsel to try to get

*[footnote continued from previous page]*
"[t]here is a C.A.S.A. educational advocate. She couldn't be here today because she's sick. The C.A.S.A advocate that's in court is the court advocate."

   **14** The references to a section 241.1 court make it apparent that the process for implementing the protocol for potential dual status minors in San Bernardino County required that the joint assessment and report be completed and then a special section 241.1 court would make the determination as to what status the Minor would come under prior to any jurisdictional hearing. However, no mention about a special section 241.1 court is made in the San Bernardino County protocol.

back to the old system.  [¶]  And our attorney, in particular, . . . has specifically requested this case go to [section] 241[.1] for a resolution."

The court replied:  "Okay.  Until that change actually happens and that conversation happens with Judge Pace as well as Judge Marshall—Judge Pace is the supervising and Judge Marshall is in J-5 doing [section] 241[.1]s—I can't do that change here; otherwise, they'll send it back.  And apparently this process was in place before, and then it was changed to the other process that you know of—  [¶]  . . .  [¶]  —and now it's changed back to the old process.  So I've already had discussions with Judge Pace and Judge Marshall about this.  And we've tried to send [section] 241[.1] cases down there . . . ."  "So it's going to have to [go] after dispo[sition] until that change is officially made."

After the court reviewed Minor's sealed record, it again rejected the program of supervision agreement whereby Minor would receive informal probation:  "I think that formal probation is appropriate in this case."  Minor's counsel then conferred with Minor.  Before taking Minor's admission, the court informed Minor that by admitting to the allegation, "[t]he court can also place you in a locked facility like juvenile hall[]" for up to six months.  Thereafter Minor admitted the truth of the allegation in count 1.  The court found Minor a ward of the court pursuant to section 602, placed Minor on formal probation, and dismissed count 2.

The court then observed:  "So at this point I'm not sure whether []CFS is going to be the lead or probation is going to be the lead.  I suspect it will be probation."  Minor's

8

counsel responded: "We'll refer it down to the [section 241.1] team, and they can make the decision." The court replied: "And is there a reason why they want this case referred down to [the section] 241[.1] [team]?" Minor's counsel responded: "I believe so that they—so that terms and conditions of probation can comply with the terms of her placement. [¶] What happened last week on another—on obviously another situation was that one hand didn't know what the other hand was doing, and once cases were resolved in court, it tied the hands of the [section] 241[.1] team with regard to what consequences they could impose." The court referred the matter for a section 241.1 assessment and set a section 241.1 hearing for December 12, 2016.

The probation department alone submitted a section 241.1 report dated December 2, 2016. The probation officer noted that on "November 22, 2016, at a Pretrial Hearing the youth was declared a ward of the court and dual status with the Department of Children and Family Services as the lead agency following the sustained allegation . . . ."[15] The probation officer reported that Minor had "been sexually violated prior to becoming a court dependent; however, she will not identify who the perpetrators were."[16] The report further reflects that "[o]n or about June 24, 2013, the youth's father . . . was

---

[15] Although the juvenile court declared Minor a ward of the court, it never expressly declared her "dual status." However, the minute order reflects that the court declared Minor a ward of the court, but placed her in the custody of CFS pending a further hearing. Thus, according to the minute order, Minor would, necessarily, have been considered "dual status" because she was declared a ward, but maintained by the agency which supervises dependents.

[16] This would appear to conflict with the prior report in which Minor had identified her father as the sexual perpetrator.

incarcerated and failed to ensure the safety and well-being of his child . . . .  [Father] has a history of substance abuse that negatively impacts his ability to adequately parent the child . . . ."  "The youth's mother . . . has a history of substance abuse that negatively impacts her ability to adequately parent the child . . . ."

The probation officer again reported Minor's prior delinquent behavior and school performance.  Minor's latest individual education plan was dated April 2016.  The officer recommended that Minor "be continued dual status with []CFS as the lead agency."  The probation officer opined Minor would benefit from continued services provided by CFS and probation.

On December 12, 2016, a joint CFS/Probation section 241.1 report was filed.  This report was signed by two social workers and two probation officers.  The report is largely reiterative of the previous probation reports.  It reflects Minor "was ordered a ward and to participate in [six] months probation and complete community service."  It further notes: "According to [Minor's] advocates she accepted a plea at the Detention hearing to avoid being remanded to juvenile hall."  At the end of the report's two-page introduction is language reading "recommendation by [section] 241.1 committee."  (Capitalization omitted.)  The form then has three boxes which the committee may check as its recommendation:  [section] 300, [section] 602, and "Dual jurisdiction."  The committee checked the latter box, adding in handwriting, "CFS Lead."

The following five pages recite facts which are, again, largely reiterative of previous reports.  It does reflect that Minor had a history of alcohol and illegal substance

10

abuse.  Also, it reports that in her previous placements, Minor "would touch the other residents in a sexual manner which made them feel uncomfortable."  The foster mother is noted as "able to provide a warm, nurturing environment.  [Minor] feels as if she is part of the family.  [Minor] has worked hard to make sure she does not jeopardize the placement."

The report was compiled without a statement from any CASA worker representing Minor.  Similarly, Minor's counsel was noted as being not available during preparation of the report.  The committee recommended Minor "be put on Informal Probation and remain a [section] 300 dependent."[17]

At the hearing on December 12, 2016, Minor's counsel stated:  "I don't know if the Court declared the minor a dual, so we need the declaration that she is dual."  The court responded:  "I wrote down that she is declared a ward, dual, but I don't know where I got that from.  I will declare the minor a ward with CFS lead jurisdiction."

## II.  DISCUSSION

"'A child who has been abused or neglected falls within the juvenile court's protective jurisdiction under section 300 as a "dependent" child of the court.  In contrast, a juvenile court may take jurisdiction over a minor as a "ward" of the court under section 602 when the child engages in criminal behavior.' [Citation.]  In cases where a child qualifies as both a dependent and a ward of the juvenile court, section 241.1 sets forth the

---

[17] This recommendation directly contradicts the recommendation in the two-page introduction which recommends minor be deemed "dual status" with CFS as the lead agency.

procedure the juvenile court must follow to determine under which framework the case should proceed.  Generally, the child cannot be both a dependent and a ward of the court." (*In re Ray M.* (2016) 6 Cal.App.5th 1038, 1048 (*Ray M.*), fn. omitted.)  However, "'[u]nder certain statutorily enumerated circumstances, the probation department and the child welfare department of a county, in consultation with the presiding judge of the juvenile court, may create a written protocol permitting a child to be "dual status"—that is, both a dependent child and a ward of the court.'" (*Id*. at p. 1048, fn. 9; § 241.1, subd. (e).)[18]

Section 241.1, subdivision (e)(2), requires that any county which adopts a written protocol for a minor to be deemed "dual status," must adopt either an "on-hold" system or a "lead court/lead agency."  "In counties in which an on-hold system is adopted, the dependency jurisdiction shall be suspended or put on hold while the child is subject to jurisdiction as a ward of the court.  When it appears that termination of the court's jurisdiction, as established pursuant to Section 601 or 602, is likely and that reunification of the child with his or her parent or guardian would be detrimental to the child, the county probation department and the child welfare services department shall jointly

---

[18] San Bernardino County has adopted just such a protocol, which provides: "Either CFS or Probation may refer cases to the [section] 241.1 Committee, to determine by consensus, an optimal recommendation that will serve both the best interest of the minor and the protection of society."  (WIC 241.1 Committee Protocol (Oct. 2012), p. 1<http://www.courts.ca.gov/documents/san_bernardino_dual_status_protocol_updated. pdf>[as of Dec. 11, 2017] (Committee Protocol).)

assess and produce a recommendation for the court regarding whether the court's

dependency jurisdiction shall be resumed." (§ 241.1, subd. (e)(5)(A).)

"In counties in which a lead court/lead agency system is adopted, the protocol

shall include a method for identifying which court or agency will be the lead court/lead

agency. That court or agency shall be responsible for case management, conducting

statutorily mandated court hearings, and submitting court reports." (§ 241.1, subd.

(e)(5)(B).)[19]

"Pursuant to section 241.1, whenever it appears that a minor may fit the criteria for

both dependency and wardship, 'the county probation department and the child welfare

services department shall . . . initially determine which status will serve the best interests

of the minor and the protection of society.' The assessment of a minor under section

241.1 is statutorily required to include, at a minimum, consideration of the following

eight factors: (1) the nature of the referral; (2) the age of the minor; (3) the prior record

---

[19] The protocol adopted by San Bernardino County appears to be both a lead court and lead agency system. For instance, in the November 22, 2016, report, several recommendations are made that CFS be deemed the "lead" agency. The court at the November 22, 2016, jurisdictional and dispositional hearing noted: "So at this point I'm not sure whether []CFS is going to be the lead or probation is going to be the lead. I suspect it will be probation." The probation officer in the section 241.1 report dated December 2, 2016, recommended that Minor remain "dual status" with CFS as the lead agency in Minor's case. (Committee Protocol, pp. 11-12, 15-16 [references to lead and nonlead agencies].) However, numerous comments at the hearing on November 22, 2016, by both the court and counsel, were made to a section 241.1 court which typically resolved such matters. (See fn. 14, *ante*.) Nevertheless, that system appears to have been malfunctioning or in a state of flux. The People inform us that the policy in the San Bernardino County Juvenile Court has now changed to ensure resolution of the section 241.1 issue prior to jurisdiction.

13

of the minor's parents for child abuse; (4) the prior record of the minor for out-of-control or delinquent behavior; (5) the parents' cooperation with the minor's school; (6) the minor's functioning at school; (7) the nature of the minor's home environment; and (8) the records of other agencies that have been involved with the minor and his or her family. [Citation.] This statutory mandate has been augmented by rule 5.512,[20] which requires the joint assessment under section 241.1 to be memorialized in a written report. Further—in addition to the eight factors set forth in section 241.1 that must be considered in any such joint assessment—rule 5.512 demands evaluation of four additional items: (1) the history of any physical, sexual, or emotional abuse of the child; (2) any services or community agencies available to assist the child and his or her family; (3) a statement by any counsel currently representing the minor; and (4) a statement by any court appointed special advocate (CASA) currently appointed for the child. [Citation.] Once the recommendations of both departments are presented to the juvenile court, it remains for the court to 'determine which status is appropriate for the minor.'" (*M.V.*, *supra*, 225 Cal.App.4th at p. 1506.)

A written report containing this assessment must be filed in connection with the delinquency petition. Whenever "'possible, the determination of status must be made before any petition concerning the child is filed' [citation] and that . . . 'assessment must be completed as soon as possible after the child comes to the attention of either department' [citation]. In addition, rule 5.512 is quite specific regarding the timing for

---

20 All references to rules are to the California Rules of Court.

14

the actual assessment report: 'If the child is detained, the hearing on the joint assessment report must occur as soon as possible after or concurrent with the detention hearing, but no later than 15 court days after the order of detention and before the jurisdictional hearing. If the child is not detained, the hearing on the joint assessment must occur before the jurisdictional hearing and within 30 days of the date of the petition.' [Citation.] Notice of the hearing—including a copy of the joint assessment report—must be provided to various interested parties at least five calendar days before the hearing." (*M.V.*, *supra*, 225 Cal.App.4th at p. 1507, fn. omitted; accord, *Ray M.*, *supra*, 6 Cal.App.5th at pp. 1049-1050.) The assessment, report, and juvenile court determination of the Minor's status as a dependent, ward, or "dual status" must be made regardless of whether a county has adopted a "dual status" protocol. (See *In re J.S.* (2016) 6 Cal.App.5th 414, 420-421.)

"We review the juvenile court's determination under section 241.1 for abuse of discretion. [Citation.] 'To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice.' [Citation.] Throughout our analysis, we will not lightly substitute our decision for that rendered by the juvenile court. Rather, we must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings where there is substantial evidence to support them." (*M.V.*,

*supra*, 225 Cal.App.4th at pp. 1506-1507; accord, *Ray M.*, *supra*, 6 Cal.App.5th at pp. 1050-1051.)

However, "'[a] discretionary order that is based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion, and is subject to reversal even though there may be substantial evidence to support that order.'" (*Ray M.*, *supra*, 6 Cal.App.5th at pp. 1050-1051.) Likewise, where the parties are not provided with adequate notice of the assessment and an opportunity to be heard regarding the determination of a minor's status, the juvenile court has deprived the minor of due process resulting in reversible error. (*Id.* at pp. 1051-1052, 1055 [holding lack of notice of the § 241.1 report and hearing to statutorily enumerated individuals resulted in a violation of the minor's right to due process which could not be found harmless]; see *M.V.*, *supra*, 225 Cal.App.4th at pp. 1510-1511 ["[D]ue process may be implicated where a required . . . report is completely omitted."].)

A. *Timeliness*

Here, if at all possible, the People should have arranged for a section 241.1 assessment and report *prior to* filing the juvenile wardship petition. Indeed, rule 5.512 provides that whenever "'possible, the determination of status must be made *before* any petition concerning the child is filed' [citation] and that . . . 'assessment must be completed as soon as possible after the child comes to the attention of either department' . . . ." (*M.V.*, *supra*, 225 Cal.App.4th at p. 1507, italics added; accord, *Ray M.*, *supra*, 6

16

Cal.App.5th at pp. 1049-1050.)  Thus, prior to filing the petition, the People should have referred the matter to the section 241.1 committee as established by the County's own protocol.  (Committee Protocol, p. 5 ["As soon as either agency discovers that a minor falls within the scope of the [section] 241.1 Committee, the agency . . . must immediately notify the liaison of the other agency in the appropriate region."].)[21]  The assessment, report, and hearing on that report should have been made prior to or, at the very latest, contemporaneously with the filing of the juvenile wardship petition.  Having an assessment report and hearing on the report prior to the filing of a petition may obviate the necessity of even filing a juvenile wardship petition if the juvenile court adopts a committee's potential recommendation that the child continue to be treated as a dependent, rather than a ward, of the court.

Moreover, even if the section 241.1 assessment, report, and hearing are not completed prior to the filing of the juvenile wardship petition, they *must* be conducted *prior* to the jurisdictional hearing *and* within 30 days of the filing of the juvenile wardship petition.[22]  Notice of the hearing and a copy of the assessment report must be

---

[21] Although, strangely, the San Bernardino County protocol appears to assume that a juvenile wardship petition will always have already been filed prior to the juvenile court's determination as to how to treat the minor pursuant to section 241.1.  (Committee Protocol, p. 9.)

[22] The People note that they are "informed and believe[] that the San Bernardino Juvenile Court has altered its policy to now provide for section 241.1 assessments before the resolution of dependent's section 602 petitions."

17

provided to the interested parties at least five calendar days before the hearing. (*M.V.*, *supra*, 225 Cal.App.4th at p. 1507; accord, *Ray M.*, *supra*, 6 Cal.App.5th at pp. 1049-1050.) Here, the section 241.1 committee did not file its assessment report until December 12, 2016, 46 days *after* the filing of the juvenile wardship petition and 20 days *after* the jurisdictional and dispositional hearing. "Given these facts, it is clear that the section 241.1 assessment in this case was not provided within the timeframes contemplated by rule 5.512." (*M.V.*, *supra*, at p. 1508.)

B.  *Adequacy of the Report*

Minor also contends that, to the extent the timeliness of the filing of the section 241.1 report and recommendation could be found harmless because one was eventually filed, that report was statutorily inadequate. Minor notes that no statement was taken from Minor's counsel or the CASA. She notes the report does not contain Minor's educational records. Minor argues the report appears to have considered the matter already settled because the court had already made a section 241.1 assessment. We agree.

"'When a parent challenges an assessment report as inadequate, the reviewing court evaluates any deficiencies in the report in view of the totality of the evidence in the appellate record.'" (*M.V.*, *supra*, 225 Cal.App.4th at p. 1511.) We presume in favor of the adequacy of assessment report. (*D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1125 (*D.M.*).) A failure to object below to procedural aspects of the section 241.1 determination forfeits the issue on appeal. (*M.V.*, *supra*, at p. 1508.)

18

As noted above, the section 241.1 report is required to have "a statement by any counsel currently representing the minor; and . . . a statement by any court appointed special advocate (CASA) currently appointed for the child." (*M.V.*, *supra*, 225 Cal.App.4th at p. 1506; rule 5.512.) Here, there was apparently no attempt to contact Minor's counsel in the dependency matter in any of the reports, let alone the section 241.1 report.[23] The section 241.1 report notes with respect to input from Minor's counsel: "No statement available at the writing of this report." However, the assessment was both dated and filed on the date of the section 241.1 hearing at which Minor's dependency counsel appeared.[24] Thus, it does not appear that any real effort was made to contact either Minor's dependency or delinquency counsel for input on the section 241.1 report.

Similarly, it does not appear that input from any CASA had been sought for the preparation of the section 241.1 report. The report simply states that Minor's "CASA

---

[23] Public defenders represented Minor at the hearings on October 31 and November 22, 2016; however, Minor's dependency counsel represented her at the hearing on December 12, 2016.

[24] Which itself presents a problem because "[n]otice of the hearing—including a copy of the joint assessment report—must be provided to various interested parties at least five calendar days before the hearing." (*M.V.*, *supra*, 225 Cal.App.4th at p. 1507.) Here, there is no indication the interested parties were provided with the report at all. Indeed, where the report was dated and filed on the same day as the hearing, the interested parties obviously did not receive it five days prior as required.

was not available at the writing of this report." However, Minor's CASA did appear at the first hearing on October 31, 2016.[25] There were also apparently a court advocate CASA and an educational advocate CASA, neither of whom were contacted or consulted for the section 241.1 report. The fact that neither Minor's counsel nor her CASA advocate had contributed to the section 241.1 assessment due to their unavailability appears to be a function of the haste with which the report was compiled rather than any real unavailability of those individuals. This is particularly so since Minor's dependency counsel actually appeared at the section 241.1 hearing that same day.

Section 241.1 also requires that the report include "the records of other agencies that have been involved with the minor and his or her family." Minor complains about the lack of her education records; as the report notes: "Current school records were requested however the undersigned has not received a reply at the completion of this report." Again, this appears to be the result of haste rather than a real attempt to obtain those records.

More worrisome to this court is the complete lack of any of the substance of or the reports themselves in the dependency proceedings. The section 241.1 report does not attach the detention, jurisdictional/dispositional, or any six-month reports from the dependency proceedings. What little we know about the dependency proceeding comes from recitations made up of only a few sentences in the probation and section 241.1

---

[25] Although, again, it is unclear whether this was actually a CASA specifically appointed for Minor or simply a court advocate CASA. (See fn. 13, *ante*.)

reports. We do not know the specific allegations made in the section 300 petition. We do not know anything other than generalizations with respect to the underlying facts supporting those allegations. We do not even know if Minor's parents' reunification services and/or parental rights have been terminated.[26] Thus, the section 241.1 report lacks sufficient information for the court to have made an informed decision with respect to a proper section 241.1 determination.[27]

The People maintain Minor forfeited the issue of the adequacy of the section 241.1 report by failing to object on this basis at the hearing on December 12, 2016. However, "[f]ailure to make a futile objection or argument does not constitute [forfeiture]." (*M.T. v. Superior Court* (2009) 178 Cal.App.4th 1170, 1177.) Here, as we shall address more thoroughly below, any objection to the timeliness, adequacy, or recommendation of the section 241.1 report would have been futile because the court had already ruled on the issue presented in the report, i.e., the court had already decided that Minor would be treated as "dual status" regardless of what was contained in the report.

---

[26] We assume the reference to a "PPR" hearing scheduled for March 20, 2017, refers to a permanent plan review, which may, but not necessarily, suggest the parents' reunification services had been terminated.

[27] We also note that the section 241.1 report recommendation was made by only four of the eight persons dictated in the county's protocol. (Committee Protocol, p. 3.)

C. *Statement of Reasons*

Minor contends the court erred in failing to state its reasons for determining Minor should be deemed "dual status." CFS maintains Minor forfeited this issue by failing to object below. We agree with Minor.

Rule 5.512(g) provides, in pertinent part: "The court must make a determination regarding the appropriate status of the child and state its reasons on the record or in a written order." A failure to object below to the section 241.1 determination forfeits the issue on appeal. (*M.V.*, *supra*, 225 Cal.App.4th at p. 1508.) However, "[f]ailure to make a futile objection or argument does not constitute [forfeiture]." (*M.T. v. Superior Court*, *supra*, 178 Cal.App.4th at p. 1177.)

Here, the court made two, separate decisions to treat minor as "dual status." The first came at the hearing on November 22, 2016, after the court had taken jurisdiction and imposed a sixth month term of formal probation. This determination was made without the benefit of a section 241.1 assessment report. The second occurred on December 12, 2016, on the same day the joint section 241.1 report had been filed. The court noted: "I wrote down that she is declared a ward, dual, but I don't know where I got that from. I will declare the minor a ward with CFS lead jurisdiction. And let's see—I don't have findings and orders. [¶] Were there findings and orders?" Minor's counsel responded: "There is no report. I believe she has a [permanency planning review] [on] March 20th, 2017." The court replied: "You're right. March 20th. Continue dual status, and we will do March 21 on the [section] 241[.1] [determination]."

22

It is unclear from the record whether the court even read the joint Welfare and Institutions Code section 241.1 assessment; although, as the People point out, "[i]t is presumed that official duty has been regularly performed." (Evid. Code, § 664.) It is also unclear whether the court actually issued a final determination regarding Minor's status. On the one hand, the court did state: "I will declare the minor a ward with CFS lead jurisdiction." On the other hand, the court expressly noted it had no findings or orders and continued the question of Minor's status pursuant to Welfare and Institutions Code section 241.1 to another date. Of course, the March 21, 2017, hearing is not a part of this record as it postdates the appeal in this case. Nonetheless, to the extent the court did make a dipositive Welfare and Institutions Code section 241.1 determination, it erred in failing to state its reasons on the record. For the same reasons discussed above, any objection to the court's failure to state reasons for its Welfare and Institutions Code section 241.1 determination would have been futile because the court had already ruled on the issue presented in the report, i.e., the court had already decided that Minor would be treated as "dual status" regardless of what was contained in the report.

D. *Whether the Errors Were Harmless*

Assuming error in both the timeliness and the adequacy of the report, as well as the juvenile court's failure to state the reasons for its findings, the People contend the errors were harmless because the eventually-filed section 241.1 assessment report contained sufficient evidence from which the court could determine Minor should be

23

treated as "dual status." The People maintain Minor cannot demonstrate that had the report been timely filed, she would have obtained a different outcome. We disagree.

In *M.V.*, *supra*, 225 Cal.App.4th 1495, the court held that the appropriate harmless error analysis in evaluating deficiencies in the section 241.1 report is whether the totality of the evidence in the appellate record supports the section 241.1 determination. (*Id*. at p. 1511 [deficiencies in § 241.1 report harmless where the evidence lacking was available to the juvenile court from other sources].) In *Ray M*., *supra*, 6 Cal.App.5th 1038, the court held that a failure to abide by the notice provisions applicable to a section 241.1 determination are scrutinized under the harmless beyond a reasonable doubt standard. (*Id*. at pp. 1051-1052, 1055 [failure to notify appropriate parties, including all attorneys of record and any CASA volunteer, of a § 241.1 hearing violated the minor's due process rights resulting in reversible error].) In *D.M.*, *supra*, 173 Cal.App.4th at page 1127, the court applied the *Watson*[28] standard of harmless error, i.e., whether the minor would have received a more favorable outcome absent the alleged error where the minor contended the lack of a section 241.1 assessment required reversal. (*D.M.*, *supra*, at p. 1127 [any error in failing to conduct a § 241.1 assessment harmless where the minor was only being treated as a dependent].)

Here, the harmless beyond a reasonable doubt standard is applicable because the court effectively held the section 241.1 hearing on November 22, 2016, without the benefit of a section 241.1 assessment report and without notifying the proper parties that

---

[28] *People v. Watson* (1956) 46 Cal.2d 818, 836.

24

it would be making a section 241.1 determination at that hearing. (*M.V.*, *supra*, 225 Cal.App.4th at pp. 1510-1511 ["[D]ue process may be implicated where a required . . . report is completely omitted."].) Thus, Minor's due process rights were directly implicated.

The People argue the *Watson* standard of error should apply, citing *D.M.*, *supra*, 173 Cal.App.4th 1117. However, we find *D.M.* distinguishable. In *D.M.*, the minor became a dependent of the court in or around 1999. (*Id*. at pp. 1120-1121.) However, she was adopted in 2003. (*Id*. at p. 1121.) Thus, she was no longer a dependent of the court when she was arrested in 2008. (*Ibid*.) The delinquency court sustained the People's allegations against the minor and ordered a probation report. (*Id*. at p. 1122.) The court later rejected the People's request to declare the minor a ward of the court, imposed informal probation, and released her to a children's home.[29] (*D.M.*, *supra*, 173 Cal.App.4th at p. 1122.) CFS filed a dependency petition. (*Ibid.*) The adoptive parents declined reunification services. After the court ordered a joint report from CFS and probation, a social worker filed a report, after conferring with the probation department, in which she recommended the appropriate manner of treating the minor would be as a dependent. (*Id*. at pp. 1122-1123.) The court thereafter took dependency jurisdiction over the minor. (*Id*. at p. 1123.) The adoptive parents appealed, contending the court

---

[29] The minor's adoptive parents were planning "'to pursue reversal of the adoption.'" (*D.M.*, *supra*, 173 Cal.App.4th at p. 1122.)

erred because the social worker's report did not satisfy the criteria of a section 241.1 report as it was prepared unilaterally.[30] (*D.M.*, *supra*, at p. 1123.)

The court held that since the minor was not a ward of the court when the juvenile court took jurisdiction over her as a dependent, no section 241.1 report was necessary. (*D.M.*, *supra*, 173 Cal.App.4th at p. 1124.) The court further noted that, even assuming a section 241.1 report was necessary, the social worker conferred with the minor's current and former probation officers who both recommended the minor would best be served by the dependency court system. That made the social worker's report sufficient to meet the requirements of section 241.1. (*D.M.*, *supra*, at pp. 1124-1125.)

Here, in contrast to the case in *D.M.*, the only report filed prior to the court's determination to treat Minor as "dual status" was one filed by the probation department. That report reflected no consultation with CFS personnel even though Minor actually was a dependent of the court at that time. Moreover, this is a case where a section 241.1 report was actually required. Furthermore, the probation report did not contain all the requirements of a section 241.1 assessment and nothing indicates that the appropriate parties were notified of the report prior to the hearing or that the hearing would even involve a section 241.1 determination. Thus, Minor's due process rights were implicated in the instant case and the harmless beyond a reasonable doubt standard is applicable.

---

[30] The adoptive parents believed the minor should be treated as a ward rather than as a dependent so that they would be "spared the asserted stigma of dependency proceedings." (*D.M.*, *supra*, 173 Cal.App.4th at p. 1120.)

Here, the above described errors were not harmless. By compelling Minor to go through both the jurisdictional and dispositional hearings prior to making a section 241.1 determination, let alone prior to even referring the matter for a section 241.1 assessment report, the court violated the very reason for the section 241.1 process itself. (*D.M.*, *supra*, 173 Cal.App.4th at p. 1127 ["[T]he purpose of section 241.1 is to resolve a scenario where dual jurisdiction may arise from petitions that already have been filed [citations], *not* to create a dual jurisdiction . . . ."].) Had the section 241.1 joint committee been tasked with preparing a section 241.1 assessment report without the juvenile's court's ruling already hanging over their heads, it is possible the committee would have recommended that the court continue to treat Minor as a dependent, rather than as a delinquent. This is not pure speculation. Indeed, the section 241.1 assessment report which was eventually filed contains contradictory recommendations; the lengthier, more detailed portion of the report recommends that Minor "be put on Informal Probation and remain a [section] 300 dependent."

As Minor observes, the court's refusals to refer the matter for a section 241.1 assessment until after it conducted both the jurisdictional and dispositional hearings may have coerced Minor's admission to the count 1 allegation. After all, even with that admission, the court warned Minor that it could impose six months' detention in juvenile hall. The section 241.1 report itself acknowledges that, "[a]ccording to [Minor's] advocates she accepted a plea at the Detention hearing to avoid being remanded to juvenile hall."

The People point out that "the court did not make the section 241.1 [referral] contingent on a true finding, merely on a resolution of the section 602 petition. . . . [Minor] could have resolved the matter by denying she committed the [offense] and proceeding[] to a jurisdictional hearing." The People's contention appears to be a concession of Minor's central claim: If Minor had done what the People suggest, she would have been forced to proceed to a contested jurisdictional hearing at which the court would have either found the allegations true or not true. Either way, she still would have been deprived of her statutory right to a section 241.1 assessment, report, hearing, and determination *prior* to the jurisdictional hearing.

Likewise, if Minor determined to take the matter to a contested jurisdictional hearing on both allegations, she may very well have received a harsher disposition if the court had found either or both allegations true. Moreover, by saying that the court would not refer the matter until after both the jurisdictional and dispositional hearings, the court implicitly telegraphed a true finding on at least one of the allegations. This would be like a criminal court telling a defendant it would not rule on her motion to exclude evidence until after trial and sentencing.

Furthermore, contrary to the People's assertion, the fact that a section 241.1 assessment report was eventually filed did not render the errors harmless. First, as we noted above, the report was statutorily inadequate. The report lacked any input from Minor's delinquency or dependency counsel. The report lacked any input from any of the CASA workers assigned to Minor's dependency case. The report lacked Minor's

28

educational records. The report lacked any substantive information regarding the dependency proceedings. The report does not appear to have been distributed to the interested parties prior to the hearing, let alone five days before as required. We do not see how any juvenile court could have made a proper section 241.1 determination based upon this report.

Second, the fact that the court had already determined that Minor would be treated as "dual status" meant that the purpose for the assessment was already a fait accompli. We cannot say that the committee issuing the report would not have felt coerced into issuing a recommendation which mirrored the finding the juvenile court had already made. Indeed, at the November 22, 2016 hearing, the court asked if there was even any reason to refer the case for a section 241.1 determination. Moreover, the court was essentially referring the matter for a section 241.1 report to determine which agency would take the lead; the court had already effectively determined Minor was "dual status." Indeed, the probation officer's report dated December 2, 2016, noted that on "November 22, 2016, at a Pretrial Hearing the youth was declared a ward of the court and dual status with the Department of Children and Family Services as the lead agency following the sustained allegation . . . ."

Furthermore, Minor's counsel noted that the manner in which the juvenile court was proceeding was providing problems for the section 241.1 court because by making the determination prior to an assessment, "it tied the hands of the [section] 241[.1] team . . . ." Likewise, as we have already noted, the section 241.1 report itself contains

29

contradictory recommendations with the initial two-page document recommending "dual status" with CFS as the lead agency and the latter five-page attachment recommending Minor "be put on Informal Probation and remain a [section] 300 dependent." This suggests that the section 241.1 joint committee did not feel free to render a recommendation that might have conflicted with the court's determination.

Finally, it is still unclear whether the juvenile court made a final, dispositive section 241.1 determination or whether it was treating that determination as one that it could continually reevaluate. By effectively determining that Minor was "dual status" on November 22, 2016, making a second determination that Minor was "dual status" on December 12, 2016, and apparently setting the matter for yet another section 241.1 hearing on March 21, 2017, the juvenile court appears to have abandoned its duty to make a prompt, dispositive determination as to Minor's status. (See *Los Angeles County Dept. of Children & Fam. Services v. Superior Court* (2001) 87 Cal.App.4th 320, 326 [§ 241.1 determination must be made quickly].)

Therefore, we hold the court erred by refusing to refer the matter for a section 241.1 report prior to making a determination of Minor's status and holding the jurisdictional hearing. We further hold that the subsequent section 241.1 report was inadequate to overcome the court's initial error. Finally, we hold the error was not harmless.

## II.  DISPOSITION

The judgment is reversed and the matter is remanded with directions.  In accordance with the views expressed in this opinion, "[w]ithin 15 days of the [finality] of this opinion, a[] [complete] [and] updated section 241.1 report shall be prepared and filed recommending an appropriate status for [Minor].  Within 20 days of the report's filing, the juvenile court shall hold a hearing on the matter and make a prompt determination of [Minor's] status pursuant to section 241.1.  Depending on the outcome of that determination, either the dependency court or the delinquency court shall then settle her placement as soon as practicably possible thereafter."  (*Los Angeles County Dept. of Children & Fam. Services v. Superior Court*, *supra*, 87 Cal.App.4th at p. 326; see *Ray M.*, *supra*, 6 Cal.App.5th at p. 1055.)

CERTIFIED FOR PUBLICATION

McKINSTER_____
                                                                                                    J.


We concur:

RAMIREZ_____
                        P. J.

MILLER_____
                        J.