Filed 5/31/23  In re S.R. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.R.,<br><br>Defendant and Appellant. | F084417<br><br>(Super. Ct. No. JJD073939)<br><br>**OPINION** |

## THE COURT\*

APPEAL from orders of the Superior Court of Tulare County.  Glade F. Roper, Judge (Retired Judge of the Tulare Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).†

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P. J., Poochigian, J. and Smith, J.

†       Judge Ana de Alba presided over the adjudication hearing in the Fresno County Juvenile Court.  Judge Roper presided over the disposition hearing in the Tulare County Juvenile Court.

This appeal asks whether the decision to treat S.R. as a ward rather than a dependent was properly handled by the Fresno County Juvenile Court, and also whether the Tulare County Juvenile Court properly denied S.R. the opportunity to participate in a deferred entry of judgment.  Our review of the record in this matter and the guiding legal principles leads us to conclude each court acted appropriately.  The judgment is affirmed.

## PROCEDURAL AND FACTUAL SUMMARY

In early January 2022,[1] S.R. became a dependent of the courts and was placed by child welfare services in his grandparents' home in Tulare County after his parents were not able to provide for his care.  Within two weeks of this placement, S.R. allegedly stole his grandparents' vehicle on January 19, and left their home without permission.  As a result of this act, S.R. was removed from his grandparents' home and placed in a foster home in Kern County.

On January 24, a juvenile wardship petition pursuant to Welfare and Institutions Code[2] section 602, subdivision (a) was filed, charging S.R. with one count of receiving stolen property, a motor vehicle (Pen. Code, § 496d, subd. (a), a felony).  This charge was related to the theft of his grandparents' vehicle.  On February 2, S.R. denied the allegations in the wardship petition.  During this hearing, the court ordered the preparation of a section 241.1 assessment (assessment).

The assessment was filed with the Tulare County Juvenile Court on February 15.  The assessment summarized an incident that occurred on February 9 while S.R. was residing in a foster home in Kern County.  The resource parent reported that S.R. was seen at a local gas station trying to steal alcohol with another boy from the foster home.  When chased, the boys jumped over a fence.  At some point, S.R. dropped his backpack,

---

[1]     All references to additional dates in this opinion are to the year 2022, unless otherwise specified.

[2]     All further statutory references are to the Welfare and Institutions Code, unless otherwise specified.

and a bottle of vodka inside the backpack broke. Although S.R. returned to the foster home, he ran away after being told by the resource parents that they were aware of his actions at the gas station. One of the resource parents believed S.R. left because he did not want to be arrested. S.R. was located in Tulare County, and was returned to the foster home.

A minute order documenting a juvenile delinquency hearing on February 17 shows S.R. admitted to the allegation in the wardship petition, contingent on a "Deferred Entry of Judgment" (DEJ). At this hearing, after confirming S.R. understood the rights he was relinquishing by agreeing to a DEJ, the juvenile court discussed with him the meaning of that process and the risks involved if he violated the terms of a DEJ. The court also declared S.R. a dependent of the court and ordered reunification services be provided for the parents. The court then engaged in a discussion with S.R. about the importance of attending school and getting good grades. When the court learned S.R. planned to go into the military in the future, he encouraged that choice but warned S.R. that he would risk this plan if he got into further trouble. The hearing concluded with the court reiterating the importance of staying in contact with probation before the March 16 hearing considering the conditions for the DEJ.

On March 1, S.R.'s mother reported to the Tulare County Probation Department that S.R. was missing after receiving treatment at a local hospital the day before. On March 3, the probation department received a phone call from the Los Angeles Police Department informing them S.R. was in custody based on allegations he was involved in a hit and run with a stolen vehicle, and the possible possession of illegal weapons. Later that same day, a social services worker contacted the probation department, stating that the resource parent in Kern County felt it was not safe for S.R. to return to the foster home because he was found in Los Angeles with a loaded weapon. On March 4, S.R. was placed in a foster home in Tulare County, and on March 7, he reportedly stole money from another foster child and the resource parent in that home. On March 7, the

3.

probation department received yet another phone call from a Fresno County probation officer informing them S.R. had been involved in a robbery in another city with three other juveniles before being caught in Los Angeles. On March 8, the resource parent from the home in Tulare County reported that S.R. was found vaping and high and was barely able to stay conscious. On March 10, S.R. was placed in a short-term residential treatment program in Fresno County.

On March 15, a report was submitted by the Tulare County Probation Department, concluding:

> "[T]he juvenile is in violation of the terms and conditions of the Home Supervision Program by leaving his residence without approval from his parent/guardian or the Probation Officer, failure to abstain from the use of alcohol and drugs, failure to complete his daily telephone check-in, failure to obey all laws, and failure to report any contact with law enforcement. Therefore, it is respectfully recommended the juvenile be found in violation of the Home Supervision Program."

Following this report, a court hearing in the Tulare County Juvenile Court was held on March 16, where S.R. was still considered a dependent. A hearing on his matter, and the pending DEJ, was continued to April 20.

On March 22, a new juvenile wardship petition pursuant to section 602 was filed in the Fresno County Juvenile Court, alleging S.R. committed carjacking (§ 215, subd. (a), a felony; count 1), and second degree robbery (§ 211, a felony; count 2). The charges stem from an incident that occurred on March 20 when police officers responded to a "disturbance" at a convenience market. When they arrived, the officers observed a young man (victim) who seemed upset and S.R. lying on the ground. They learned that S.R. attempted to steal the victim's car when he went into the market to pay for gas. As the victim was exiting the market, he noticed that someone was trying to take his car. He ran to the car and tried to open the front passenger door and then jumped in through an open window. A struggle then ensued and the car struck another car nearby before the

victim could get his car into "park." The fight continued outside the car, with the victim knocking S.R. to the ground.

On March 30, a hearing was held in the Fresno County Juvenile Court related to the new juvenile wardship petition involving the carjacking. The hearing was held under the authority of section 241.1 and required the preparation of a new assessment in Fresno County on whether S.R. should be designated a dependent of the court (§ 300), or a ward (§§ 601, 602). A Tulare County probation officer attended the hearing. At the beginning of the hearing, the court stated it did not have the assessment and asked someone to provide a copy.[3] When the parties confirmed there was an assessment, the court then asked if there were any changes to the assessment sought by the parties. The People stated their agreement with the recommendation that S.R. be designated a ward of the court. S.R.'s attorney did not state whether there was agreement with the assessment, but did argue on behalf of S.R. her belief the case had been overcharged based on the facts showing the struggle and the injuries inflicted on S.R. At the end of these arguments, the court agreed with the recommendation in the assessment and found S.R. a ward of the court under section 602.

The Tulare County Juvenile Court became aware of the proceedings pending in Fresno County on April 20 at a hearing previously set to address its own pending decision on whether S.R. was a dependent or ward. The court stated its opinion that the dependency petition might have to be dismissed now that S.R. was found to be a ward in another jurisdiction. The court then left on the calendar a hearing on the dependency

---

**3**　　A copy of the assessment prepared in Fresno County is part of the court record and was filed on March 30, with a signature indicating it was completed on March 29. The assessment further has an acknowledgment at the end indicating the court read and considered the document, and adopted the recommendations and findings. Without evidence to the contrary, we must assume the juvenile court properly considered this document at the time of the rulings made here. (See Evid. Code, § 664.)

petition scheduled for August, which would come after any resolution in the Fresno County Juvenile Court.

On April 21, a first amended juvenile wardship petition was filed in Fresno County, adding a charge for vehicle theft (Veh. Code, § 10851, subd. (a), a felony; count 3). The next day, on April 22, a hearing was held in the Fresno County Juvenile Court on this latest juvenile wardship petition. The parties informed the court a resolution had been reached, and that S.R. would be admitting a felony violation of Vehicle Code section 10851, subdivision (a), which was alleged in count 3, and that counts 1 and 2 would be dismissed. The court then spoke directly to S.R. to verify he understood the rights he was relinquishing by admitting the felony violation. The court found notice had been given in accordance with the law, and that S.R. was advised of his rights and knowingly, intelligently, and voluntarily gave up those rights. The court also found S.R. understood the conduct alleged in the amended petition and the consequences of his admission, and that his admission was voluntarily made. The probation department then made a request that the matter be transferred to Tulare County for disposition, which the court then ordered.

Once the case was transferred to Tulare County, a disposition hearing was held on May 18. During this hearing, arguments were allowed to address the possibility of keeping S.R. a dependent of the court so that he could still get the benefit of a DEJ. After the probation department expressed concerns about proper placements due to S.R.'s issues with substance abuse and the seriousness of the charges brought against him, the court addressed S.R. about his choices and how those choices could impact his future. The court ultimately denied the request for a DEJ. Finally, the court found S.R. a ward of the court and assigned him to the midterm program for a period of 365 days. This appeal followed.

DISCUSSION

S.R. raises two arguments while challenging the decisions made in two different juvenile courts. The first argument concerns the completeness and timeliness of the assessment prepared for the hearing in the Fresno County Juvenile Court. The second argument concerns the decision by the Tulare County Juvenile Court to deny S.R. a DEJ.

## I. The Issues Regarding the Section 241.1 Assessment in the Fresno County Juvenile Court

Pursuant to section 241.1, subdivision (a), when "a minor appears to come within the description of both Section 300 and Section 601 or 602, the county probation department and the child welfare services department shall, … initially determine which status will serve the best interests of the minor and the protection of society." Generally, a "child who has been abused or neglected falls within the juvenile courts protective jurisdiction under section 300 as a 'dependent' child of the court. In contrast, a juvenile court may take jurisdiction over a minor as a 'ward' of the court under section 602 when the child engages in criminal behavior." (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1505 (*M.V.*).) However, a minor who qualifies as both a dependent and a ward of the juvenile court cannot be both. (§ 241.1, subd. (d).) At this point, it becomes necessary for a county probation department and the child welfare services department to jointly develop a written protocol and "determine which status will best serve the best interests of the minor and the protection of society." (§ 241.1, subd. (c).) "The recommendations of both departments shall be presented to the juvenile court with the petition that is filed on behalf of the minor, and the court shall determine which status is appropriate for the minor." (§ 241.1, subd. (a).)

S.R. challenges the assessment submitted to the Fresno County Juvenile Court, arguing it was not submitted to the court in a timely manner, failed to include comments from either minor's counsel or a CASA representative, and contained no educational

records. S.R. believes these failures were constitutional errors that could not be forfeited, despite the fact minor's counsel did not object in the juvenile court at the time the assessment was considered. S.R. relies on the case of *In re R.G.* (2017) 18 Cal.App.5th 273 (*R.G.*), to argue that these failures could only be rendered harmless under a standard that would require this court to conclude the errors were harmless beyond a reasonable doubt. We reject this contention by noting due process would only be at issue if the assessment failed to address "principal questions" needed for the court to properly exercise its discretion. (See *M.V.*, *supra*, 225 Cal.App.4th at p. 1510.)

We must first, therefore, address whether the arguments related to the assessment could be forfeited at the juvenile court level.

### A. Were Challenges to the Assessment Forfeited?

Case law has held that although section 241.1 imposes mandatory statutory duties on various entities, including the juvenile court, this "does not preclude the application of the forfeiture rule." (*M.V.*, *supra*, 225 Cal.App.5th at p. 1508.) "[A]ny other rule would permit a party to trifle with the courts. The party could deliberately stand by in silence and thereby permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable." (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339.) "[N]either due process nor any other argument advanced … provides a basis for the relaxation of the forfeiture rule in this case."[4] (*M.V.*, at p. 1511.)

Furthermore, the case S.R. relies so heavily upon to argue he suffered a violation of his due process rights, is distinguishable. In *R.G.*, an assessment was not available before the jurisdictional hearing was held to determine if the minor was a ward or a dependent. (*R.G.*, *supra*, 18 Cal.App.5th at p. 290.) It was not a matter of items missing from the assessment or the technical timeliness of the assessment that rendered the

---

**4** In fact, the opinion in *R.G.* cites the validity of the forfeiture rule when proper objections are not raised to an assessment submitted to a court during a jurisdictional hearing. (*R.G.*, *supra*, 18 Cal.App.5th at p. 286.)

hearing unfair, thereby triggering a due process violation. It was the complete lack of an assessment before decisions were made in the case that triggered a due process violation.

When reviewing the totality of this record and concluding that the information actually missing from the assessment did not rise to the level expressed in the *R.G.* opinion, we find any challenge to the substantive adequacy of the assessment or its timeliness was forfeited by the failure to object during the juvenile court proceedings.

**B.      Even if Not Forfeited, the Errors Were Either Harmless or Moot**

Even if the objections raised by S.R. were not forfeited, we cannot conclude the juvenile court abused its discretion when concluding S.R. was subject to a juvenile wardship. When there is a challenge that an assessment is inadequate, " 'the reviewing court evaluates any deficiencies in the [assessment] in view of the totality of the evidence in the appellate record.' " (*M.V.*, *supra*, 225 Cal.App.4th at p. 1511.) Again, S.R. focuses on the lack of certain information in the assessment, such as comments from his counsel or a CASA representative, and the lack of his educational records. When we look at the totality of the record, however, we see substantial evidence supports the juvenile court's decision.

Section 241.1, subdivision (b)(2) provides an assessment should address:

> "but not be limited to, consideration of the nature of the referral, the age of the minor, the prior record of the minor's parents for child abuse, the prior record of the minor for out-of-control or delinquent behavior, the parents' cooperation with the minor's school, the minor's functioning at school, the nature of the minor's home environment, and the records of other agencies that have been involved with the minor and his or her family."

The assessment before the court on March 30 addressed most if not all these factors. The assessment noted that in a span of three months S.R. had five different placements since December 2021, and his parents were refusing to have him back in their home. The evidence showed individuals from both Fresno County probation and Tulare County social services cooperated in the preparation of the assessment, and that both expressed

9.

their concerns about S.R.'s escalating criminal behavior, his substance abuse, and the fact he was not taking advantage of services to address those issues. Finally, there was agreement between the two agencies that S.R. should remain in custody pursuant to section 602. During the hearing considering the assessment, counsel for S.R. objected to the factual summary in the assessment, saying it did not fairly depict the injuries S.R. received during the alleged carjacking, and that he may have been overcharged. On the issue of how S.R. functioned at school, the assessment stated he attended two different high schools during his junior year, had only completed one-fourth of the units he would need to graduate, and "refused to attend school as required." Furthermore, while no actual records were part of the assessment, it noted an individualized education plan had been developed for S.R. Based on this summary, even if we did not consider the objections to the assessment forfeited, we do not believe it is reasonably probable S.R. would have received a more favorable outcome absent the alleged errors he raised. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1127.)

Finally, we also find persuasive the argument this entire issue is moot because of the later proceedings held in the Tulare County Juvenile Court when the possibility of a dependency was considered again. That court did not simply adopt the findings of the Fresno County Juvenile Court. Specifically, on the question of a dependency or wardship, the Tulare County Probation Department expressed concerns about a proper placement for S.R. due to his issues with substance abuse and the seriousness of the charges brought against him. The court also recognized S.R.'s mother was concerned for the safety of her other child if he was returned to her care, the seriousness of the crimes he committed, and that he appeared to exhibit no remorse.

## II.    The Tulare County Juvenile Court's Denial of a Deferred Entry of Judgment

Pursuant to section 790, a minor may be considered for a DEJ if all of the following criteria are met:

"(1) The minor has not previously been declared to be a ward of the court for the commission of a felony offense.

"(2) The offense charged is not one of the offenses enumerated in subdivision (b) of Section 707.

"(3) The minor has not previously been committed to the custody of the Department of Corrections and Rehabilitation, Division of Juvenile Facilities.

"(4) The minor's record does not indicate that probation has ever been revoked without being completed.

"(5) The minor is at least 14 years of age at the time of the hearing.

"(6) The minor is eligible for probation pursuant to Section 1203.06 of the Penal Code.

"(7) The offense charged is not rape, sodomy, oral copulation, or an act of sexual penetration specified in Section 289 of the Penal Code when the victim was prevented from resisting due to being rendered unconscious by any intoxicating, anesthetizing, or controlled substance, or when the victim was at the time incapable, because of mental disorder or developmental or physical disability, of giving consent, and that was known or reasonably should have been known to the minor at the time of the offense."  (§ 790, subd. (a).)

"The question of whether a minor who is eligible for DEJ is also *suitable* for DEJ rests within the juvenile court's discretion.  (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 606.)  Under section 790, the prosecuting attorney is required to determine whether the minor is eligible for DEJ; if the court finds the minor is also suitable for DEJ and would benefit from education, treatment, and rehabilitation efforts, it may grant DEJ[, after exercising its discretion].  (§ 790, subd. (b); see also Cal. Rules of Court, rule 5.800.)" (*In re R.C.* (2010) 182 Cal.App.4th 1437, 1441.)

In his opening brief, S.R. acknowledges the juvenile court must make an independent determination on the availability of a DEJ and is not compelled to grant it. Case law has also held that there is nothing in the statutory language that mandates a minor be granted a DEJ if that minor meets the criteria expressed in section 790.  (*In re*

*Sergio R.*, *supra*, 106 Cal.App.4th 597, 603.)  Instead, a court considers the suitability of the minor for a DEJ based on the record before it, not simply the criteria specified in the relevant statutes and rules.  (See *In re C.W.* (2012) 208 Cal.App.4th 654, 660.)

The juvenile court in Tulare County initially decided on February 17 that S.R. could be granted a DEJ following the filing of the juvenile wardship petition involving his theft of his grandparents' vehicle.  The matter was then continued so that a probation report could be prepared setting out the conditions for the DEJ.  That issue was set to be heard on March 16.  However, that date had to be continued to April 20 due to S.R.'s violation of a home supervision program.  Soon thereafter, a new juvenile wardship petition was filed against S.R. on March 22 in Fresno County.  When the issue was returned to the Tulare County Juvenile Court on May 18, a discussion ensued about S.R.'s suitability based on the new wardship petition in Fresno County, the fact he had left a number of placements before, his continued commission of crimes, and his substance abuse.  Based on this record, we cannot say the juvenile court's denial of a DEJ constituted an abuse of discretion.[5]

Nor can we conclude the juvenile court erred when denying a DEJ because of the placement issues that might occur in the future.  The discussion in the record shows this issue was raised and addressed by a probation officer who noted S.R.'s substance abuse issues posed problems for the type of placement his attorney was seeking.  We also note S.R.'s mother was not in favor of a placement in her home because of concerns she had about the safety of her other child.  The court addressed each of these factors when issuing its ruling.

---

[5]    Counsel for S.R. initially argues that the errors committed when denying a DEJ resulted in a denial of due process, heightening the standard of review.  However, at no point does counsel develop this argument and instead acknowledges the applicability of an abuse of discretion standard of review.  We see no reason to apply a heightened level of scrutiny to this issue based on this record, the facts, and the legal authorities cited.

The appellate court is not in a position to second guess which particular placements are best for S.R. in Tulare County.  That is the role of the juvenile court, in consultation with the appropriate parties and agencies.  We find no legal authority provided on behalf of S.R. causing us to conclude the juvenile court abused its use of discretion on this question.

## **DISPOSITION**

The orders entered in both Fresno County and Tulare County, and which are at issue here, are affirmed.